UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHN COATES,

      Petitioner,

v.                                Case No.  4:15cv341/MW/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 8).  Petitioner replied.  (Doc. 11).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On October 5, 2009, petitioner was charged by information filed in the Circuit Court for Leon County, Florida, Case No. 09-CF-3054, with four counts:  two counts of armed robbery with a firearm, one count of attempted armed robbery with a firearm, and one count of resisting an officer without violence.  (Doc. 8, Ex. A, p. 9).[1]  An amended information was filed on February 1, 2011, charging petitioner with five counts: two counts of armed robbery with a firearm (Counts I and IV), two counts of attempted armed robbery with a firearm (Counts II and III), and one count of resisting an officer without violence (Count V).  (Ex. A, pp. 10-11).  The armed robberies carried a maximum possible sentence of life in prison, and each of the attempted armed robberies carried a maximum possible sentence of 15 years in prison.  *See* Fla. Stat. § 812.13(2)(a), § 775.087, 777.04; *see also* Ex. A, pp. 10, 49.

On March 24, 2011, petitioner entered a counseled, non-negotiated, open plea to the court of no contest to each count as charged.  (Ex. A, pp. 49-50).  Petitioner's plea was memorialized in a written "Plea and Acknowledgement of Rights" form which petitioner executed and defense counsel certified.  (*Id.*).  The trial court conducted a plea colloquy and accepted petitioner's plea after finding it was entered

---

[1] All references to exhibits are to those provided at Doc. 8.  References to page numbers of exhibits are to the numbers appearing at the bottom right-hand corner of the page.

freely and voluntarily with a full and complete understanding of its consequences. (Ex. A, pp. 50, 95-111).  On May 3, 2011, petitioner was adjudicated guilty of all counts as charged and sentenced to 15 years imprisonment followed by 5 years of probation on Counts I and IV, concurrent 15-year terms of imprisonment on Counts II and III, and a concurrent 364-day term of imprisonment on Count V.  (Ex. A, pp. 59-69, 112-141).  On January 31, 2013, the Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions and the terms of the sentences imposed, but reversed for the correction of two errors in the assessment of fines, fees and costs.  *Coates v. State*, No. 1D11-2503, 106 So. 3d 509 (Fla. 1st DCA 2013) (copy at Ex. D, pp. 10-11).  Rehearing was denied February 14, 2013.  (Ex. E, pp. 14-15).  On April 19, 2013, the trial court issued an order deleting certain fines and costs.  (Ex. L, p. 58).  An amended judgment and sentence was entered April 30, 2013.  (Ex. L, pp. 59-69).

While petitioner's direct appeal was pending, on August 24, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, titled "Lack of Jurisdiction".  (Ex. F, pp. 1-7; Ex. L, pp. 1-7).  The state circuit court denied the motion on September 25, 2012.  (Ex. F, pp. 8-13; Ex. L, pp. 12-17).  Petitioner appealed (Ex. F, pp. 14-15).  On April 16, 2013, the First DCA vacated the circuit court's order on the grounds that the court lacked

jurisdiction to deny the motion during the pendency of petitioner's direct appeal. The First DCA remanded with the instruction to permit petitioner to refile the postconviction motion without prejudice. (Ex. J). *Coates v. State*, No. 1D12-5398, 111 So. 3d 266 (Fla. 1st DCA 2013) (copy at Ex. J).   After the mandate issued on May 14, 2013 (Ex. K), the state circuit court entered an order rescinding its September 25, 2012 order denying relief, and entered a new order summarily denying petitioner's postconviction motion titled "Lack of Jurisdiction".  (Ex. L, p. 70-75).  Petitioner appealed.  (Ex. L, pp. 76-77).  The First DCA affirmed, per curiam and without a written opinion, with the mandate issuing January 8, 2014.  *Coates v. State*, No. 1D13-2687, 128 So. 3d 799 (Fla. 1st DCA 2013) (Table) (copy at Ex. M, pp. 11, 12).

Also on August 24, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, titled "Ineffective Assistance of Counsel".  (Ex. L, pp. 8-11; Ex. O, pp. 8-11).   On September 25, 2012, the state circuit court ordered the State to show cause why an evidentiary hearing should not be set.  (Ex. L, p. 18; Ex. O, p. 18).  The State conceded that an evidentiary hearing was necessary (Ex. L, pp. 19-20; Ex. O, pp. 19-20), and the circuit court granted an evidentiary hearing (Ex. L, p. 26; Ex. O, p. 26).  The court appointed postconviction counsel (Ex. O, p. 94), and held an evidentiary hearing on August 22, 2014, (Ex. O,

pp. 98-134).  After receiving evidence and hearing argument, the state circuit court denied relief, stating its reasons on the record.  (Ex. O, pp. 131-132).  A subsequent written order followed, denying petitioner's postconviction motion for the reasons orally announced at the evidentiary hearing.  (Ex. O, p. 95).  The First DCA affirmed, per curiam and without written opinion, with the mandate issuing June 24, 2015. *Coates v. State*, No. 1D14-4430, 166 So. 3d 768, (Fla. 1st DCA 2015) (Table) (copy at Ex. U).

Petitioner filed his federal habeas petition on July 6, 2015.  (Doc. 1).  The petition raises two grounds for relief:  (1) the trial court lacked jurisdiction over petitioner because the charging document did not identify him by name in each count; and (2) trial counsel was ineffective for failing to file a motion to suppress and a motion to dismiss.  (Doc. 1).  Respondent asserts that each claim fails for one or more of the following reasons: (1) the claim is not cognizable on habeas review because it raises a purely state law issue; (2) the claim is procedurally defaulted; (3) the claim is waived by petitioner's plea; (4) the state court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 8).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't*

*of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## DISCUSSION

Ground One          "Lack of jurisdiction for conviction on uncharged crimes".  (Doc. 1, p. 5 in ECF).

Petitioner's first ground for relief provides, verbatim:

> Florida law requires that the essential elements of "John Coates" be named as a defendant in each count of an Information.  Thus, by law,

> defendant is not charged with that crime in which his name is omitted. Petitioner is currently being held on uncharged crime by Florida law.

(Doc. 1, p. 5 in ECF).  Petitioner asserts he raised this claim in his Rule 3.850 motion titled "Lack of Jurisdiction".  (*Id.*, p. 6 in ECF).  Respondent argues that this claim is not cognizable on habeas review because it presents a purely state law issue, and that the claim is procedurally defaulted due to petitioner's failure to raise it on direct appeal.  (Doc. 8, pp. 6-7).  Petitioner replies that although he mentioned only Florida law in his federal habeas petition, he "expressly incorporated both State and Federal case law" in his claim before the state court.  Petitioner argues that his challenge to the sufficiency of the information raises an issue of constitutional dimension under the Fifth Amendment and Federal Rule of Criminal Procedure 7(c), which specifies requirements for indictments and informations.  (Doc. 11, pp. 1-2).

### A.  State Law Issue

The claim presented in petitioner's habeas petition, even construed liberally, makes no suggestion that the charging document failed to comply with constitutional standards.  Petitioner expressly asserts only a state law violation, and makes no mention of the United States Constitution, a right protected by the Constitution or federal law, any federal standard, or any federal case law.  (Doc. 1, p. 5 in ECF).  Federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732

(2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "Questions of state law rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)).

B.    Merits

Even giving petitioner the benefit of the doubt by construing his petition, his reply and his state postconviction pleadings collectively as alleging a constitutional violation grounded in due process, and even further assuming to petitioner's benefit (without deciding) that the First DCA resolved his claim on the merits as opposed to imposing a state procedural bar (due to either petitioner's waiver of the issue by entry of his no contest plea, petitioner's failure to raise the claim on direct appeal, or

petitioner's failure to present the constitutional dimension of his claim to the state circuit court), petitioner still is not entitled to federal habeas relief.

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision

of [the] Court." *Id.* at 102.

Respondent has provided a copy of the initial information and amended

information.  (Doc. 8, Ex. A, pp. 9-11).  Both charging documents identify petitioner

as the <u>sole</u> defendant and include, in the caption, petitioner's name, race, gender,

date of birth, and Social Security number.  (*Id.*, p. 9).  The operative portion of the

initial and amended informations begins with this declaration:

> IN THE NAME OF AND BY THE AUTHORITY OF THE STATE
> OF FLORIDA:
>
> WILLIAM N. MEGGS, State Attorney for the Second Judicial
> Circuit of the State of Florida, charges that in Leon County, Florida, the
> above-named defendant(s):

(*Id.*, pp. 9, 10).  In the initial information, four counts followed; in the amended

information, five counts followed.  (*Id.*, pp. 9-11).  Petitioner has never claimed that

the identifying information was insufficient or inaccurate, only that his name had to

be repeated in each count, despite the fact that he was the only defendant named in

the information.  The First DCA's decision in this case was not contrary to or an

unreasonable application of clearly-established federal law, because no Supreme

Court precedent establishes that the Constitution requires an otherwise properly

identified defendant to be re-named in each count.  Similarly, no Supreme Court

precedent establishes that the Constitution is violated by referring to the sole accused

defendant as the "above-named defendant" before listing one or more specific charges.  No decision of the Supreme Court suggests that the charging document in this case was unconstitutional.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Failure to file motion to dismiss".  (Doc. 1, p. 7 in ECF).

Petitioner's second ground for relief, which is set forth in a handwritten attachment to the petition, consists of three sub-claims:

> Counsel's failure to move for motion to dismiss robbery charges, in which victims stated defendant was not the man who robbed them, prejudiced the defense.

> Trial counsel rendered ineffective assistance of counsel for failing to move for suppression of defendant's identification and dismissal of robbery charges after learning through discovery, that none of the victims defendant is accused of robbing, identified or claimed that defendant is the man that robbed them, rendered counsel's performance deficient.

> Trial counsel's failure to make a reasonable investigation, move to file suppression of defendant's identification, and dismissal of the robbery charges after learning the fact that on the knight [sic] of defendant's arrest, no one identified, nor claimed that defendant was the man that robbed them prejudiced the defense and rendered the

results of the proceedings fundamentally unfair as defendant was convicted for crimes he did not commit.

  Had counsel made a reasonable investigation into the fact that no one identified, nor claimed that defendant was the man who robbed them, moved for suppression of defendant's identification and dismissal of robbery charges, utilizing the victims' statements to support the motion, there's a reasonable probability absent counsel's unprofessional errors the results of the proceedings would have been different.

(Doc. 1, pp. 16-17 in ECF) (emphasis added).  Respondent asserts that petitioner presented these issues to the state court in his postconviction motion titled "Ineffective Assistance of Counsel", and that the state court denied relief.  (Doc. 8, p. 7).  Respondent argues that petitioner is not entitled to habeas relief because his three sub-claims asserting ineffective assistance of counsel are waived by his knowing and voluntary no contest plea to the charges, and because the state court's denial of relief was a reasonable application of *Strickland*.  (*Id.*, pp. 7-13).

A. Waiver

  Respondent argues that this claim was waived by petitioner's entry of his no contest plea, because petitioner does not assert he was mis-advised about the plea and does not allege any facts going to the voluntariness of the plea.  In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea.  *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127,

71 L. Ed. 347 (1926).  "A guilty plea is an admission of criminal conduct as well as

the waiver of the right to trial."  *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995)

(*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747

(1970)).  With regard to a plea admitting criminal conduct, the Supreme Court

explained:

> A guilty plea "is more than a confession which admits that the
> accused did various acts."  *Boykin v. Alabama*, 395 U.S. 238, 242, 89
> S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969).  It is an "admission that he
> committed the crime charged against him."  *North Carolina v. Alford*,
> 400 U.S. 25, 32, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  By
> entering a plea of guilty, the accused is not simply stating that he did
> the discrete acts described in the indictment; he is admitting guilt of a
> substantive crime."

*United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

"Waivers of constitutional rights not only must be voluntary but must be

knowing, intelligent acts done with sufficient awareness of the relevant

circumstances and likely consequences."  *Brady* at 748.  Accordingly, in the context

of a guilty plea, the standard for determining the validity of the plea is "whether the

plea represents a voluntary intelligent choice among the alternative courses open to

the defendant."  *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242.  The assistance of

counsel received by a defendant is relevant to the question of whether a defendant's

guilty plea was knowing and intelligent insofar as it affects the defendant's

knowledge and understanding.  *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983).  This waiver includes all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *see also, e.g., McMillin v. Beto*, 447 F.2d 453, 454 (5th Cir. 1971); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).  The Supreme Court said in *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.*, 411 U.S. at 267

The Eleventh Circuit recently addressed the issue of waiver in *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345 (11th Cir. 2015).  In *Arvelo*, a federal habeas

petitioner claimed that trial counsel was ineffective for failing to pursue a motion to suppress his confession prior to his entry of a no contest plea.  788 F.3d at 1347-48. The petitioner alleged that counsel's performance affected his decision to enter a no contest plea, because the evidence forming the basis of the proposed suppression motion (the petitioner's confession obtained in violation of *Miranda*) was the only piece of evidence supporting his conviction.  *Id.* at 1349.  The Eleventh Circuit rejected the state court's determination that the petitioner waived his ineffectiveness claim by entering a no contest plea, explaining:

> To begin, we have little difficulty concluding that the state court misapplied binding Supreme Court precedent.  Contrary to the state court's decision, the Supreme Court has expressly held that a defendant does not waive an ineffective assistance of counsel claim simply by entering a plea.  Instead, because "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases," courts must continue to apply the familiar two-part test provided by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369-70 (1985) (quotation omitted).  Therefore, we decide (1) whether counsel's representation fell below an objective level of reasonableness, and (2) if so, whether a defendant suffered prejudice as a result.  *Id.* at 57, 106 S. Ct. at 369.
>
> In cases like this one, where a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress.  This is because a lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial.  *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733,

741 (2011) (addressing *Strickland*'s performance prong and stating that the relevant question was whether "no competent attorney would think a motion to suppress would have failed"); *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1219 n. 6 (11th Cir.2015) ("Hill makes clear that the prejudice inquiry in a case like this turns largely on an assessment of whether the defense likely would have changed the outcome at trial.").

We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both "opportunities and risks" without fully knowing the strength of the State's case. *Moore*, 562 U.S. at 124, 131 S. Ct. at 741. Therefore, we must, as we do for all *Strickland* claims, afford "substantial deference" to a lawyer's strategic choices. *Id.* at 126, 131 S. Ct. at 742. But because ineffective assistance of counsel claims are not waived by entering a plea, the state court's failure to consider those strategic choices at all was contrary to clearly established federal law.

*Id.* at 1348.

*Arvelo* is distinguishable from this case, because here petitioner does not contend that his plea was involuntary due to counsel's failure to file a motion to dismiss and/or to suppress. (*See* Doc. 1, pp. 16-17 in ECF). For example, petitioner does not allege that the victims' identifications of him (or their failure to identify him) was an outcome-altering issue affecting his decision to enter a plea. The Eleventh Circuit has found an ineffective assistance claim waived where it was not accompanied by an allegation of involuntariness. *See, e.g., Bullard v. Warden, Jenkins Corr. Center*, 610 F. App'x 821, 824 (11th Cir. 2015) ("Here Mr. Bullard does not contend that his plea was involuntary due to his counsel's failure to file a

motion to suppress, so the ineffectiveness claim is waived by the plea.").[3]  There is a valid basis to conclude that petitioner's ineffectiveness claim is waived by his plea.[4]

B.     Merits

Even if the court were to reach the merits of petitioner's ineffective assistance claim, federal habeas relief is not warranted.  Petitioner raised this ineffective assistance claim in his Rule 3.850 motion titled "Ineffective Assistance of Counsel". (Ex. O, pp. 8-11).  The state circuit court appointed conflict-free postconviction counsel, Charles Collins.  (Ex. O, p. 94).  An evidentiary hearing was held August 22, 2014, (Ex. O, pp. 98-134).  Postconviction counsel suggested that petitioner testify first, to let him "identify what his allegations are."  (Ex. O, p. 100).  When counsel asked petitioner to tell the court what his main allegation was, petitioner replied that trial counsel (Charles Hobbs) was ineffective for failing to "suppress identification."  (*Id.*, p. 102).  Petitioner said that counsel failed to "suppress identification and all evidence connecting me to the robbery . . . because no one ever claimed that I robbed them."  (*Id.*).

---

[3]The undersigned cites *Bullard* only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

[4] Petitioner's conclusory allegation, made for the first time in his reply, that counsel "coerced" him into entering his plea (doc. 11) was not presented to the state court.

Petitioner claimed he was prejudiced because counsel lied that he deposed one victim.  Also, counsel said that one victim allegedly said three of five victims who showed up the night of petitioner's arrest identified him as the man who robbed them.  Petitioner then said he pled no contest when "in reality counsel never deposed anyone."  Also, all three victims who showed up said he was not the one who robbed them.  (*Id.*, p. 102).

Petitioner added that in a postconviction motion to get county jail phone records, he requested recordings of conversations he had with counsel.  Petitioner handed some papers to the judge.  Neither postconviction counsel nor the prosecutor had seen them until that morning.  Postconviction counsel said he understood Judge Hankinson had interpreted petitioner's motion as a request for a subpoena duces tecum, but he (counsel) had never been provided with any materials subject to the subpoena.  (*Id.*, p. 104).  The prosecutor suggested that the paper petitioner produced at the hearing was something petitioner wrote.  (*Id.*).[5]

The prosecutor questioned petitioner about his plea.  Petitioner agreed that he recalled the lengthy recitation of the factual basis for the charges by the prosecutor

---

[5] On April 9, 2013, Judge Hankinson entered an order granting petitioner's request that the Leon County Jail be ordered to produce records of all phone calls petitioner made to Attorney Hobbs. Judge Hankinson directed the clerk to issue a subpoena duces tecum to the records custodian for the Leon County Sheriff's Office "[f]or all records of any phone conversations between the defendant, John Coates, and his attorney, Charles Hobbs, between August 4, 2010, and May 3, 2011."  (Ex. O, pp. 56-57).

at the plea hearing.  (Ex. O, pp. 108-111).  Petitioner testified that his only claim for relief was that Hobbs did not file a motion to suppress "identification." (*Id.*, p. 112). Petitioner agreed that conversations between himself and his lawyer should be private, but he assumed that everything in the Leon County jail was recorded. Petitioner had never heard of attorney-client privilege.  Petitioner nonetheless hoped that the documents or recordings he sought from the sheriff's office would hold private conversations between himself and Attorney Hobbs.  (*Id.*, pp. 113-114).

Petitioner's former trial counsel, Attorney Charles Hobbs, testified at the postconviction evidentiary hearing.  Hobbs described petitioner's case as "very very straightforward, easy case."  Hobbs testified that it happened "all the time" that more than one person would be charged as a principal to armed robbery, and that all principals were equally liable.  (Ex. O, pp. 118-119).  Hobbs remembered discussing the case with petitioner, and discussing the plea by telephone.  Hobbs told petitioner that there was no way in the world he would not be found guilty, and that he was facing a life sentence.  Petitioner decided to enter a plea.  (*Id.*, p. 120).

Hobbs had been working with inmates at the Leon County jail since 2001, and was familiar with the jail's phone call system and attorney-client visitation.  The jail monitored phone calls, but had a strict prohibition against monitoring attorney-client phone calls.  Hobbs elaborated to say that an attorney must have a phone number on

file with the jail; so that when a call came from that number, the jail could not listen. Hobbs testified that he would be shocked if there was a tape recording of his conversation with petitioner, and that there would be no such tape recording.  (Ex. O, pp. 120-122).

Hobbs' opinion was that proof of identification would have been a problem for the State but for petitioner's confession to Investigator Scott Cherry.  Hobbs added that petitioner also confessed to him (Hobbs) that he was involved with the crime, but he hoped to get a mitigated sentence.  Hobbs explained to petitioner that he faced serious liability.  Hobbs, however, had done many straight-up pleas to Judge Hankinson and other judges, and had success in obtaining a youthful offender a "mitigated" sentence.  Hobbs thought he could do so for petitioner because petitioner had a good background, did not have a lengthy criminal history, and other factors. (Ex. O, p. 122-123).  Hobbs tried to get a youthful offender sentence, which would have limited petitioner's incarceration to 6 years.  Petitioner was not successful in that because of the number of victims and the fact that those victims were still having nightmares and "all kinds of stress" from the way the robbers treated them during the robberies.  (*Id.*, pp. 123-124).

Hobbs testified that he knew how to seek suppression of identification evidence.  Doing so would have been contrary to his case strategy, however, because,

based on Hobbs' conversation with Investigator Cherry and his private conversations with petitioner, Hobbs thought such a motion would be frivolous.  Hobbs was also conscious of the fact that had they proceeded to trial, petitioner faced a life sentence or significant term of years in prison, given the number of victims, etc.  Hobbs made a tactical decision, with petitioner's agreement, not to file baseless motions, and to take responsibility so that Judge Hankinson would be more sympathetic to petitioner.  Hobbs did so because he had always felt that taking responsibility meant a lot to Judge Hankinson.  (Ex. O, pp. 124-125).

Hobbs felt the sentence he obtained for petitioner (15 years in prison) was a "good success" compared to what petitioner could have received.  Hobbs testified that petitioner did not insist that he file a motion to suppress.  When Hobbs first asked petitioner what he thought an appropriate sentence would be, petitioner – showing youthfulness and inexperience – responded 5 years of probation.  Hobbs informed petitioner that that was unrealistic, and talked to petitioner about "what he was really looking at."  Hobbs advised petitioner that the number of prison years could be from 20 to 60, or higher.  Petitioner was then "gung ho" to enter a plea.  (Ex. O, p. 126).

On cross-examination, Hobbs testified that petitioner agreed it was in his best interest to enter a plea.  Based on Hobbs' investigation and attendance at depositions,

Hobbs concluded there was no basis to move for suppression of identification. Although the decision not to pursue suppression was a tactical one by Hobbs, the decision to plea was one petitioner and Hobbs arrived at together.  Petitioner understood that once he entered a plea, any opportunity to litigate the case by filing motions was "off the table."  (Ex. O, pp. 127-128).

After considering the testimony and counsels' arguments, the postconviction trial court denied relief, explaining:

> THE COURT:  Okay.  All right.  Well, Mr. Coates, your motion was well drafted, but with the testimony here today it has no merit in that I think that you've received effective assistance of counsel by Mr. Hobbs, because he did give you his best legal advice as to what to do. You were fully informed at every stage of that process.  You agreed fully with the decisions that were made.  There was no basis from the evidence that's been presented at this hearing here that would justify a motion to suppress.  So, I'm going to deny your motion here.

(Ex. O, p. 131).   Addressing the issue of the subpoena for phone records from the jail, the court stated:

> [E]ven if the order had been entered, there would be no communications between you, Mr. Coates, and Mr. Hobbs that you would be able to obtain, because the jail would not be able – doesn't have that.   And it's clear from the testimony here today that communications between counsel and client is not something that the jail could legally have.  And it would be in a whole lot of trouble if they did have such communications.  So, that there would be none that you could have obtained.

(Ex. O, p. 132).  The First DCA summarily affirmed.  (Ex. U).

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington, supra*, applies.  *See Hill*, 474 U.S. at 58; *see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain).  To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland* at 689.  The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

>[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70. Counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, while counsel can be

deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *Richter*, 562 U.S. at 99. The First DCA could reasonably have accepted the lower court's finding that Attorney Hobbs' testimony at the postconviction evidentiary hearing was credible. Based on that testimony, the First DCA could reasonably have concluded that petitioner's post-*Miranda* confession to Investigator Cherry (described in Cherry's arrest report (Ex. A, pp. 12-14)), a confession Attorney Hobbs investigated by talking to Cherry and petitioner, was sufficient to overcome the lack of identification evidence from the victims. The First DCA also could reasonably have concluded that counsel's failure to file a motion to dismiss or to suppress identification was a reasonable tactical decision; that counsel's advice concerning the plea "was within the range of competence demanded of attorneys in criminal cases", *McMann*, 397 U.S. at 771; and that petitioner's plea was not the product of constitutionally ineffective performance of counsel.

The state court's rejection of petitioner's constitutional claim was not contrary to, and did not involve an unreasonable application of, clearly established federal

law as determined by the Supreme Court.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentences in *State of Florida v. John Coates*, Leon County Circuit Court Case No. 09-CF-3054, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 19th day of December, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.